

**STEIN & NIEPORENT** LLP
1441 Broadway, Suite 6090
New York, NY 10018
(212) 308-3444 Main
(212) 836-9595 Fax
www.steinllp.com

David Stein: DSTEIN@STEINLLP.COM
(admitted in NY, NJ, PA, DC, IL)

David Nieporent: DNIEPORENT@STEINLLP.COM
(admitted in NY, NJ)

March 13, 2024

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:** **Wilson and Atiles v. Sycamore Lee Corp., et al.**
> ***Docket Number 22-cv-249 (VMS)***

Dear Magistrate Judge Scanlon:

We represent plaintiffs Scarlett Wilson and Jimmy Atiles in the above-captioned matter and submit this letter to the Court with the consent of Younghoon Ji, Esq.., counsel for defendants, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

Plaintiffs filed their complaint in this matter on January 14, 2022. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") the Fair Labor Standards Act ("FLSA") and parallel claims under the New York Labor Law ("NYLL") for failure to properly pay them the minimum wage, as well as claims under the NYLL for failure to pay all wages owed, and failure to provide them with wage notices or valid paystubs.

Specifically, plaintiffs alleged that they worked for defendants (who operated a bar) as bartenders. Ms. Wilson alleged that she worked from August 2018 through August 2019, while Mr. Atiles said he worked October 2017 through June 2019. Plaintiffs did not work regular schedules, but Ms. Wilson said that she worked two to three shifts per week, and Mr. Atiles said that he worked three to five shifts per week. (The length of a shift varied, depending on whether it was the early shift or the late shift; the late shift did not have a determinate ending, as when the bar closed would depend on whether there were still customers. However, the base shift was 7 hours, and a longer shift would last roughly 9 hours.) As a result, Ms. Wilson estimates that she typically worked between 14 and 27 hours per week, and Mr. Atiles estaimated that he typically worked between 12 and 35 hours per week. Plaintiffs allege that the bar did not keep actual time records.

The gravamen of plaintiffs' complaint is that the bar did not credit or pay them for all of their hours worked. Instead, defendants would credit/pay them for 3½ hours for a shift. As a result, they allege that their effective pay was far below the minimum wage, even though they were nominally paid at higher rates ($7.50 per hour in 2017 and $8.65 per hour in 2018 and 2019.) Plaintiffs also received tips, but plaintiffs contend that defendants were not entitled to take advantage of the tip credit because defendants failed to keep proper records or provide proper notice of tip policies. Plaintiffs further allege that they did not receive wage notices when they were hired, nor did they receive accurate paystubs, since those documents did not reflect all of the hours that they worked.

Based on these facts, as well as records that defendants supplied — that plaintiffs contended were inaccurate — plaintiffs conservatively estimated damages of $32,000 for Ms. Wilson (which includes actual and liquidated damages of about $11,000 each and $10,000 for Wage Theft Prevention Act violations), and $21,500 for Mr. Atiles (which includes actual and liquidated damages of $5,750 each and $10,000 for Wage Theft Prevention Act violations). In other words, plaintiffs calculated that they were owed at least $53,500 combined, plus attorneys' fees and costs.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $50,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final settlement amount is less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants generally denied plaintiffs' allegations about their work schedules — claiming they were scheduled for many fewer shifts than they said, and thus denied that plaintiffs were not fully paid for all of their hours worked. Specifically, plaintiffs were paid by payroll company and defendants had pay records, so there was no dispute about the amount of wages that plaintiffs received — only about the number of hours plaintiffs worked. If defendants' records were believed, plaintiffs would not be entitled to Wage Theft Prevention Act damages for failure to provide accurate paystubs; further, plaintiffs' damages could be limited to roughly $17,000, reflecting the difference between the minimum wage with and without the tip credit.

Plaintiiffs did not have any records of their own regarding their hours worked. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of credible time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Moreover, plaintiffs had another employee (who had previously sued defendants over the same issue) prepared to testify in their favor. Nevertheless, the case would have come down to credibility, and the parties were scheduled to go to trial. By agreeing to settle at this juncture, plaintiffs were able to gain a large percentage of the damages they were potentially owed, without the delay of waiting for a trial verdict or the risks attendant with trial. Thus, plaintiffs decided to accept defendants' offer.

<u>FLSA Settlement Approval</u>

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. The total settlement amount is 93% of plaintiff's maximum possible recovery. And even after attorneys' fees, plaintiffs will be receiving complete recovery of their claimed actual and liquidated FLSA damages.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, plaintiffs are protected by a confession of judgment for 200% of the settlement amount (less amounts paid).

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE*

*Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $2,497.90 (filing fee, service of process, mediator, and deposition costs)[1] and will retain 1/3 of the net settlement (i.e., an additional $15,834.03) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Moreover, it represents an attorneys' fee amount of approximately 0.69 times our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency

---

[1] The Court can take judicial notice of the filing fee; documentation for the other expenses are attached as Exhibit C.

litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 17.40 | $6,795.00 |
| David Nieporent | Senior Associate/Partner | $325 | 49.20 | $15,990.00 |
| **TOTAL** | | | **66.60** | **$22,785.00** |

A copy of our time records, maintained contemporaneously, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein and Stein & Nieporent, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases from 2008 through 2020, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My former senior associate, now partner, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. From 2008 through 2020, his practice consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. *See Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), *report and recommendation adopted*, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates).

Moreover, those rates reflect fees that have actually been awarded to us. For example, Judge D'Arcy Hall recently awarded us those rates. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. Travel time was billed, as per firm policy, at half the attorney's regular rate. Some time was "No charged" at our discretion.

681382 (E.D.N.Y. Feb. 22, 2021), as did Judge Brodie in *Pena v. Super Economic One Way Supermarket Corp., et al.*, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), *report and recommendation adopted by* 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018).

And in the Southern District, for example, we were recently awarded fees of $425 and $325, respectively, by Judge Nathan in *Vasquez et al. v. NS Luxury Limousine Service Ltd. et al.*, 2022 WL 377378 (S.D.N.Y. Feb 8, 2022), and by Magistrate Judge Netburn in *Solano v. Andiamo Café Corp.*, 2021 WL 2201372 (S.D.N.Y. June 1, 2021), and in the default judgment context Judge Seibel recently approved fees of $425 and $325 for myself and David Nieporent, respectively, in *Medina Baca et al. v. NB General Construction Corp., et a*l., 20-cv-4701 (CS) [Docket Entry 18](December 10, 2020). We have also been awarded fees of $400 and $325, respectively, by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Briccetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (S.D.N.Y., September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 2019 WL 76706 (January 2, 2019), and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Respectfully submitted,

David Stein

Enc.

cc: Younghoon Ji, Esq. (via ECF)